**Emmeth SEALEY, Plaintiff–Appellant,**

v.

**Lieutenant T.H. GILTNER, Hearing Officer; Thomas A. Coughlin, III, Commissioner of New York State Department of Corrections; Donald Selsky, Director; R. Brimmer, Correctional Officer, Defendants-Appellees.**

No. 393, Docket 95–2683.

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1996.

Decided June 16, 1997.

Jonathan J. Konoff, New York City (Arthur S. Linker, Rosenman & Colin, L.L.P., New York City, on the brief), for Plaintiff-Appellant.

Martin A. Hotvet, Assistant Attorney General, State of New York, New York City (Dennis C. Vacco, Attorney General of the

State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, New York City, of counsel), for Defendants-Appellees.

Before: CARDAMONE and LEVAL, Circuit Judges, and POOLER *, District Judge.

POOLER, District Judge.

Plaintiff-appellant Emmeth Sealey, a prisoner in the custody of the New York State Department of Correctional Services ("DOCS"), complains of alleged due process violations surrounding his confinement to the Special Housing Unit ("SHU") at the Auburn Correctional Facility ("Auburn") between March 30, 1990, and August 29, 1990. The district court (Hurd, M.J.) dismissed Sealey's complaint in its entirety, and Sealey appealed. We affirm the dismissal as to former DOCS Commissioner Thomas A. Coughlin, III. However, we reverse and remand as to the remaining defendants because Sealey demonstrated genuine issues of material fact concerning the process he received and is entitled to develop a factual record to show that his long-term administrative segregation deprived him of a liberty interest.

**BACKGROUND**

**I. Administrative Proceedings**

The relevant chronology is not disputed. On March 30, 1990, Auburn correctional officers charged Sealey with assault, fighting, and possession of a weapon and placed him in administrative confinement in the SHU pending a disciplinary hearing. After conducting a Tier III disciplinary hearing on April 6, 1990, hearing officer Lieutenant G. Richards found Sealey not guilty because no employee witnessed the alleged assault and a confidential informant's report was unsubstantiated. Richards cautioned Sealey, however, that Richards might recommend placing Sealey in

administrative segregation based on the confidential information he had reviewed.

On April 10, 1990, Richards issued his administrative segregation recommendation. The written recommendation was based on "both confidential and other information." Joint Appendix on Appeal at 88. Richards claimed that Sealey's "continued presence in general population could seriously jeopardize the safety and security of this facility" and that "information on file indicates you are involved in extortion and strong arm." ( *Id.*).

Lieutenant T.H. Giltner conducted a hearing on the administrative segregation recommendation on April 16, 1990. During the hearing, Sealey asked to see the confidential information on file in the prison superintendent's office, and Giltner refused his request. Sealey also requested that Giltner call Richards to testify as to how "he came up with this information I was extorting people and ... what I was extorting ... stuff like that." Joint Appendix on Appeal at 146. Giltner declined Sealey's request due to the confidential nature of the information. Sealey responded that "I'm not asking him to name the accomplice man I'm asking him what was I extorting and who...." (*Id.*). Giltner also denied Sealey's request to call an additional witness. At the close of the hearing, Giltner directed that Sealey remain in administrative segregation based on Richards' assertion that confidential information suggested Sealey had engaged in extortion.

Sealey appealed the administrative segregation determination, and defendant Donald Selsky, the acting director of special housing/inmate discipline, reversed Giltner's determination on June 18, 1990. Sealey found that Giltner failed to independently verify the reliability of the confidential informant and inappropriately refused witnesses Sealey requested.

On July 8, 1990, Lieutenant Brimmer conducted a rehearing. Brimmer also refused Sealey's request to call witnesses, including Richards. At the end of the hearing, Brimmer decided that Sealey must remain in administrative segregation "until [his] environ-

---

* Honorable Rosemary S. Pooler, United States District Court Judge for the Northern District of New York, sitting by designation.

ment is changed and/or [his] attitude towards other person[s'] personal property is handled in a less threatening manner." Joint Appendix on Appeal at 159. Brimmer described the reasons for his determination as the length of time Sealey had served, his history of uncooperative behavior, and "continuous misbehavior charges against other inmates" that disrupted facility programs. (*Id.*). Brimmer noted that he had relied on both confidential information and previous disciplinary charges. Selsky affirmed Brimmer's determination on September 7, 1990. However, DOCS already had transferred Sealey to the Shawangunk Correctional Facility, where Sealey was released into the general prison population on August 29, 1990.

On November 1, 1990, Sealey brought a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules in New York State Supreme Court. He requested a declaration that his rights had been violated as a result of Brimmer's failure to independently appraise the credibility of the confidential informant and refusal to call Sealey's witnesses. Sealey also sought expungement of the result of his administrative segregation hearing from his institutional record. On January 22, 1991, Selsky reversed Brimmer's determination.

## II. District Court Proceedings

Sealey commenced this action on January 10, 1992, pursuant to 42 U.S.C. § 1983. The parties consented to proceed before a United States magistrate judge, and the court (McAvoy, C.J.) on June 24, 1992, referred the case to Magistrate Judge Hurd. After requesting and receiving answers to interrogatories, in January 1993 Sealey moved for summary judgment. Defendants cross-moved for dismissal or summary judgment. In a memorandum decision and order filed July 15, 1994, Magistrate Judge Hurd (1) dismissed Sealey's complaint against Coughlin because Sealey had failed to demonstrate Coughlin's personal involvement in the alleged due process violations; (2) dismissed Sealey's complaint against Selsky on grounds of absolute immunity; (3) declined to dismiss Sealey's complaint against Giltner because Giltner, the watch commander on duty at the time of

the violent incident who made the Unusual Incident Report, arguably violated Sealey's rights by holding him in the SHU without an opportunity to be heard for seven days from March 30 until the disciplinary hearing on April 6, 1990; (4) determined that no due process violations occurred after April 6, 1990, because Sealey received notice and an opportunity to be heard; and (5) dismissed the complaint against Brimmer because Sealey did not allege that Brimmer was personally involved in due process violations occurring prior to the April 6, 1990, hearing.

On February 27, 1995, Giltner sought permission to renew his motion for summary judgment based on proof that Sealey had been notified that he could write to the Deputy Superintendent for Security to complain about his pre-hearing confinement. In a memorandum decision and order entered September 11, 1995, Magistrate Judge Hurd granted Giltner's motion and directed the Clerk to enter judgment dismissing the complaint in its entirety. The magistrate judge did not consider Giltner's notice argument. Instead, Magistrate Judge Hurd held that under the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), Sealey had no liberty interest in being free from segregated confinement between March 30 and April 6, 1990.

## DISCUSSION

### I. Summary of Arguments and Holdings

Sealey contends that factual issues on both the extent of his liberty interest and the process accorded him require that we reverse the judgment below. First, Sealey urges that we find either that (1) he had a liberty interest in avoiding long-term administrative segregation as a matter of law or (2) he should be allowed to create a factual record showing that his long-term administrative segregation constituted an atypical and significant hardship within the meaning of *Sandin*. *See Sandin*, 515 U.S. at ——, 115 S.Ct. at 2300. Second, Sealey argues that the district court erred by measuring the process he received against the minimal standard set forth in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675

(1983). Sealey contends that he presented competent evidence that his confinement was disciplinary or retaliatory in nature and potentially unlimited in duration, and these facts implicated the more stringent procedural protections mandated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Finally, Sealey contends that under either *Wolff* or *Hewitt*, he has demonstrated issues of fact as to whether he received the process due him.

Defendants respond that assuming Sealey had a liberty interest in remaining free from administrative segregation in the SHU, he received all process rightfully attendant to deprivation of that interest. Defendants also argue that we should find as a matter of law that New York has not created by regulation or statute a liberty interest in freedom from administrative segregation. We decline defendants' invitation to decide whether New York law creates such a liberty interest because this issue was not raised below. We find that Sealey is entitled to develop a record concerning the nature of his deprivation. Further, we hold that Sealey has demonstrated factual issues on the adequacy of the process he received.

## II.   Standard of Review

█ We review de novo the district court's grant of summary judgment. *Duamutef v. O'Keefe*, 98 F.3d 22, 24 (2d Cir.1996).

## III.   Involvement of Defendant Coughlin

█ The district court dismissed Sealey's claim against Coughlin because Sealey failed to allege sufficient personal involvement on Coughlin's part to make him liable under Section 1983. Sealey has not argued on appeal that this determination was incorrect. We agree that Sealey did not demonstrate that Coughlin was personally involved in depriving Sealey of any constitutional right. A supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in

supervising subordinates who caused the violation. *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986). Sealey wrote two letters to Coughlin. Coughlin referred the first letter, Sealey's appeal from the second administrative segregation hearing, to defendant Selsky for decision. Sealey's second letter was a status inquiry to which Coughlin responded by informing Sealey that Selsky had rendered a decision. Sealey's letters and Coughlin's response do not demonstrate the requisite personal involvement on Coughlin's part, and we affirm the dismissal of Sealey's claims against Coughlin.

## IV.   The Remaining Defendants

### A.   Absolute Immunity

Magistrate Judge Hurd found that Selsky enjoyed absolute immunity from suit because he acted in a quasi-judicial capacity in reviewing disciplinary determinations. The magistrate judge thus dismissed Sealey's claims against Selsky. Defendants now concede based on this court's intervening decision in *Young v. Selsky*, 41 F.3d 47, 52 (2d Cir.1994), *cert. denied*, 514 U.S. 1102, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995), that Selsky does not enjoy absolute immunity. Therefore, we must examine the merits of Sealey's due process claim as to defendant Selsky as well as defendants Brimmer and Giltner.

### B.   Liberty Interest

The magistrate judge dismissed the complaint against the remaining defendants because he found that (1) the defendants gave Sealey all the process he was due for the period after April 6, 1990, and (2) Sealey had no liberty interest in remaining free from administrative segregation between March 30 and April 6, 1990. We first address this latter holding, which implicates *Sandin*.

█ Determining whether an inmate has received procedural due process involves "a two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir.

1996). As a result of *Sandin,* a prisoner has a liberty interest only if the deprivation of which he complains is atypical and significant and the state has created the interest by statute or regulation. *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996) *(per curiam ).* The district court determined that Sealey lacked a liberty interest in the period between March 30 and April 6, 1990, and plaintiff agrees that he had no liberty interest in avoiding that short period of pre-hearing confinement. *Id.* Defendants, however, urge that we find Sealey had no liberty interest in his entire period of confinement, which ended on August 29, 1990.

Defendants concede that the atypical and significant hardship prong of a *Sandin* liberty analysis may require fact-finding. Moreover, in a series of decisions issued after the district court's decision in this matter, we have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement. *See, e.g., Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller v. Selsky,* 111 F.3d 7, 8–9 (2d Cir.1997); *Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 38 (2d Cir.1996).

■ Sealey had no opportunity to develop a factual record on the liberty interest issue because he had no notice that the district court intended to consider dismissal of his complaint based on the absence of a liberty interest. The magistrate judge raised the *Sandin* question *sua sponte* and without notice to the parties. A party has no obligation to respond to grounds that the moving party does not raise in a summary judgment motion. *See Bryant v. Rudman,* 933 F.Supp. 270, 274–75 n. 2 (S.D.N.Y.1996); *see also Edwards v. Honeywell, Inc.,* 960 F.2d 673, 674 (7th Cir.1992).

Notwithstanding this lack of notice, Sealey did produce some proof that (1) he faced an indefinite term in the SHU limited only by the length of his sentence;[1] and (2) he actually served 152 days during which he was deprived of all programing opportunities and privileges that inmates in general population enjoyed. Sealey must be given an opportunity to develop additional facts relevant to the liberty analysis. *Cf. Samuels,* 77 F.3d at 38 (holding that plaintiff's placement in a limited privileges program may require fact-finding on the liberty interest issue).

■ Despite defendants' concession that fact-finding may be necessary to determine whether Sealey incurred an atypical and significant deprivation, they urge that we find as a matter of law that New York statutes and regulations create no liberty interest. We do not address this question because defendants did not make their argument to the district court. Ordinarily this court will not consider issues raised for the first time on appeal, and we decline to do so in this instance. *Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994).

### C. Due Process

■ The district court found that Sealey had no claim against any of the defendants for his segregation after April 6, 1990, because from that date forward Sealey had received all the process he was due. Magistrate Judge Hurd defined the minimal process due as that required by *Hewitt*—some notice, an opportunity to be heard, and an informal non-adversary review of the evidence—and found that defendants conclusively established that Sealey received all the process to which he was due. *See Hewitt,* 459 U.S. at 476, 103 S.Ct. at 873–74. We do not agree with this analysis.

Sealey argues he was entitled to more process than *Hewitt* mandates both because his confinement actually was disciplinary in nature and because of the length of his potential and actual confinement. The district court did not consider this contention. We remand for consideration of whether the defendants acted in bad faith, labeling as administrative a confinement that only could be

---

**1.** Prior to *Sandin,* we assessed an inmate's entitlement to procedural protections in light of the potential penalty he or she faced. *See McCann v. Coughlin,* 698 F.2d 112, 121 (2d Cir.1983); *McKinnon v. Patterson,* 568 F.2d 930, 939 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). We have not determined since *Sandin* was issued whether a potential or actual penalty triggers procedural protections.

justified as punitive and if so whether the notice Sealey received was adequate. Assuming the court concludes the confinement was administrative, and that notice was sufficient to justify the confinement initially, the court should consider whether the initial notice, coupled with any explanation Sealey received at later hearings, sufficed to justify the full duration of the confinement. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) and *Wright v. Smith*, 21 F.3d 496, 499–501 (2d Cir.1994) (finding, prior to *Sandin*, that an extended duration of administrative segregation gives an inmate a right to a hearing).

By emphasizing notice, we do not intend to restrict the district court's analysis. Depending on the scope, if any, of the liberty interest the district court finds, it may wish to examine the adequacy of other aspects of the process Sealey received. We note in particular that Sealey asserts that both Giltner and Brimmer failed to make an independent review of the evidence before them.

Because Sealey has demonstrated factual issues concerning the process he received and is entitled to an opportunity to develop a record concerning the existence of a liberty interest, we must reverse the district court's judgment insofar as it dismissed the complaint against Selsky, Giltner and Brimmer.

## CONCLUSION

For the foregoing reasons, we affirm so much of the judgment appealed from as dismissed the claim against Coughlin and reverse the remainder. We remand for further proceedings consistent with this opinion.