**Tyrone WRIGHT and George Lyons, Plaintiffs,**

v.

**T.J. MILLER, Acting Superintendent, et al., Defendants.**

**No. 96 Civ. 1224(HB).**

United States District Court, S.D. New York.

July 31, 1997.

Opinion Amending Decision Aug. 22, 1997.

---

**8.** There are several other outstanding motions *in limine* which the court will address at a later date.

Tyrone Wright, Comstock, NY, pro se.

George Lyons, Woodbourne, NY, pro se.

Lyle S. Zuckerman, Proskaure Rose Goetz & Mendelsohn LLP, New York City, for plaintiffs.

Bridget Carol Lenti, Dennis C. Vacco, Atty. Gen. State of New York,, New York City, for defendants.

## OPINION AND ORDER

BAER, District Judge.

Plaintiffs are inmates incarcerated in the custody of the New York State Department of Correctional Services ("DOCS"). They bring this action pursuant to 42 U.S.C. § 1983, seeking declaratory relief and money damages for alleged violations of their constitutional rights in the conduct of prison disciplinary hearings against them. Defendants move for summary judgment. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs were involved in an altercation with another inmate, Louis Maple, at the Woodburne Correctional Facility on October 9, 1995. As a result of the altercation, disciplinary charges were brought against plaintiffs. Each plaintiff had an individual Tier III disciplinary hearing conducted by hearing officer Lieutenant Thomas Trask, a defendant herein. At the conclusion of the separate hearings, Lieutenant Trask imposed the following penalties on plaintiffs. The disposition with respect to plaintiff Lyons was 15 months confinement to a special housing unit ("SHU") (and concomitant loss of privileges) and 12 months recommended loss of good time. The disposition for plaintiff Wright was 12 months SHU confinement (and loss of privileges) and 12 months recommended loss of good time. Plaintiffs appealed and each determination was reversed. The reversal was based on a failure to allow plaintiffs to call certain witnesses.

Following the reversals, plaintiffs were each given a rehearing before another hearing officer, Lieutenant Anthony DeBartolo, another defendant herein. Lieutenant DeBartolo found plaintiffs guilty of the infractions charged and imposed the same sentence that had been imposed previously. Defendants appealed these determinations as well, but they were affirmed.

Plaintiffs then brought this action in federal court alleging that their rights were violated in several ways with respect to the conduct of both the initial hearings and the rehearings. Specifically, plaintiffs allege their rights were violated with respect to the initial hearings when they were denied the right to call witnesses by defendant Trask (counts 1, 3) and when defendant T.J. Miller, the Acting Superintendent, failed to reverse

the determinations (count 4).[1] They allege their rights were violated with respect to the second hearing when they were denied their right to call witnesses by defendant DeBartolo (counts 1, 5) and when they were denied their right to a hearing before an impartial hearing officer (counts 6, 7). The latter allegation relates to conversations Trask and DeBartolo had before each of the rehearings, which plaintiffs allege were improper and rendered DeBartolo partial.

## DISCUSSION

### A. Edwards

■■■ Surprisingly, neither plaintiffs nor defendants have addressed the significant impact of the Supreme Court's recent decision in *Edwards v. Balisok*, —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) on this case. *Edwards* held that a "claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good time credits" is not cognizable under § 1983 where the allegations of due process violations, if true, would "necessarily imply the invalidity of the punishment imposed" unless the prisoner establishes that the determination at issue has previously been invalidated. *Id.* at ——, ——, 117 S.Ct. at 1585, 1589. Plaintiffs' contentions here—that they were deprived of the right to an impartial hearing officer and the right to call witnesses on their behalf—if true, would necessarily imply an invalid disposition, i.e. their loss of good time and SHU confinement, and require reversal and a new hearing. Accordingly, any claims based on plaintiffs' rehearings (and thus all claims against defendant DeBartolo) are

barred by *Edwards*, as those determinations were never invalidated.[2]

The same analysis produces a different result when applied to the violations alleged with regard to the initial hearings. Those hearings were invalidated on appeal, thus meeting the prerequisite set forth in *Edwards*. The parties have not addressed this issue, although the complaint clearly sets forth claims against defendant Trask with respect to the denial of witnesses (count 3). Such claims can only relate to the initial hearings, at which Trask served as hearing officer.[3] Furthermore, the complaint states a claim against defendant Miller for failing to "rectify the errors of the hearing" (count 4). While the complaint does not specify which "hearing" is being referred to, a liberal reading of the complaint indicates this is a reference to the initial hearings, which were ultimately reversed by Donald Selsky, the Director of Special Housing.

■■■ The inquiry, therefore, is whether plaintiffs can maintain a cause of action for the due process violations that occurred at the initial hearings, even though the sentence imposed in those hearings was reimposed in the subsequent hearings. It is well established that "where there has been a denial of due process, the victim is entitled at least to nominal damages," even if the resulting liberty deprivation is justified. *Patterson v. Coughlin*, 905 F.2d 564, 568 (2d Cir.1990); *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (recognizing section 1983 action for due process violation even where deprivation is justified).[4] *Edwards* itself recognized this principle and affirmed its validity in the prison context.

---

1. Though the determinations were subsequently reversed by DOCS Director of Special Housing Donald Selsky, defendant Miller failed to reverse them in his capacity as Acting Superintendent.

2. Plaintiffs' request for declaratory relief cannot provide the vehicle for invalidating the sentences. As plaintiffs were subject to loss of good time and, subsequently, denial of parole, invalidity of the determinations must be brought by writ of habeas corpus, *see Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841–42, 36 L.Ed.2d 439 (1973), with the concomitant requirement that plaintiffs exhaust all state remedies.

3. Count one sets forth a claim against the "defendants" for depriving plaintiffs of the right to call witnesses. As such, it appears to be duplicative of count 3 (naming defendant Trask) and count 6 (naming defendant DeBartolo).

4. Defendants argue that the administrative appeals process corrected any errors in the initial hearings and thus provided plaintiffs with due process. The cases on which defendants rely, however, deal with *post*-deprivation due process violations, *see, e.g. Campo v. New York City Employees' Retirement Sys.*, 843 F.2d 96 (2d Cir. 1988), as opposed to the pre-deprivation due process at issue here.

*Edwards,* —— U.S. at ——, 117 S.Ct. at 1587. *Edwards* limited such actions, however, to two categories of cases: those where the challenge to the procedures, if valid, would not necessarily imply the invalidity of the punishment imposed and those where the punishment has already been invalidated. *See Umar v. Johnson,* 173 F.R.D. 494, 501–03 (N.D.Ill.1997) (recognizing continued validity after *Edwards* of claims for injury inherent in due process violation itself, where due process claim does not necessarily invalidate substantive deprivation of liberty). As noted above, the initial hearing determinations were invalidated by DOCS, thus clearing the way for plaintiffs to proceed with this Section 1983 action for damages caused by the mere fact of a due process violation. If plaintiffs prove they were denied due process, they would be entitled to nominal damages for such a deprivation. They would also be entitled to damages for proven mental anguish resulting from the due process violation itself. *Carey,* 435 U.S. at 264, 98 S.Ct. at 1052 ("mental and emotional distress caused by the denial of due process itself is compensable under § 1983"); *Miner v. City of Glens Falls,* 999 F.2d 655, 662 (2d Cir. 1993). They would not, however, be entitled to damages for their incarceration in SHU or their lost good time, as those penalties were imposed pursuant to the rehearings, which the Court must deem constitutionally sufficient unless and until invalidated.

## B. Sandin

■ Having overcome the *Edwards* hurdle with regard to the initial hearings, plaintiffs must also overcome the formidable hurdle established in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Sandin* held that prisoners are entitled to due process protections only when they are subject to "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300. Inmates alleging violation of their due process rights must "establish both that the confinement or restraint creates an 'atypical and significant' hardship under *Sandin, and*

that the state has granted them . . . a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996) (emphasis added).

Defendants argue that plaintiffs had no liberty interest in being free from SHU confinement, regardless of the length of the confinement. The cases they rely on, however, did not so hold, but rather found that periods of confinement of up to one year did not create liberty interests. Other courts have held that longer periods of SHU confinement do constitute an "atypical and significant hardship" giving rise to due process protections. *See Lee v. Coughlin,* 902 F.Supp. 424, 432 & n. 9 (S.D.N.Y.1995) ("I am hard pressed to believe that 376 days in SHU would not constitute an 'atypical and significant' hardship as defined by *Sandin"),* *reconsideration granted,* 914 F.Supp. 1004 (S.D.N.Y.1996); *Lee v. Coughlin,* No. 93 Civ. 8952(LAP), 1997 WL 193179 at *3 (S.D.N.Y. April 18, 1997) (citing cases); *Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (twelve month confinement to SHU may constitute "atypical and significant hardship" under *Sandin); Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.) (one year of punitive segregation triggers due process protections), *cert. denied,* —— U.S. ——, 117 S.Ct. 367, 136 L.Ed.2d 257 (1996).

■■ More importantly, defendants argument ignores the Second Circuit's admonition that *"Sandin* did not create a per se blanket rule that disciplinary confinement may never implicate a liberty interest." *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997). Rather, district courts are required to make factual findings with respect to the conditions of confinement at issue in each case. *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997) (noting "desirability of fact-finding before determining whether a prisoner has a liberty interest [under *Sandin* ] in remaining free from segregated confinement"); *Miller,* 111 F.3d at 9; *Brooks v. DiFasi,* 112 F.3d 46 (2d Cir.1997). Plaintiffs here were sentenced to 15 and 12 months SHU confinement respectively,[5] and

---

**5.** Plaintiff Lyons apparently served 10 months in SHU, and the remainder of his 15 month "sentence" in keeplock.

defendants have not submitted affidavits or other evidence to establish a basis for a factual determination as to whether such confinement constitutes an atypical and significant hardship. Absent a greater factual record, the Court is unwilling to hold as a matter of law that such confinement does not create a liberty interest.

One final point must be addressed with regard to the *Sandin* analysis. As discussed above, plaintiffs here are only challenging the injury arising from the deprivation of procedural due process, not from the resultant penalty. It thus seems anomalous to focus on the penalty imposed in order to determine whether plaintiffs were entitled to due process in the first place. Such an analysis, however, is necessary in order to reconcile the Supreme Court's holding in *Sandin* with its more recent affirmation in *Edwards* of the availability of nominal damages for due process violations regardless of any actual injury. The Court has located no caselaw directly on-point. While the Supreme Court[6] and the Second Circuit[7] have been equivocal as to whether potential penalties suffice to create liberty interests, the question here relates not to actual versus potential penalty, but to an actual penalty that is justified by a later hearing that corrected the due process violations.[8] The nature of plaintiffs' injury in this case relates directly to the penalty imposed (and ultimately reimposed)—i.e., the extent of their injury from the due process violation is based on the knowledge that they were sentenced to a year or more in SHU in an unconstitutional hearing. Focus on the penalty imposed thus makes logical sense in determining whether plaintiffs were entitled to due process protections. "That resolution of potentially competing considerations may not weave a seamless web, but this Court's task is to apply the principles so recently reconfirmed by the Supreme Court, not to

inquire into the wisdom of the policies underlying those principles." *Umar*, 173 F.R.D. at 502 (reconciling Supreme Court's holdings in *Edwards, Heck* and *Wolff*).

 The final prong of defendants' *Sandin* challenge—that New York state has not created a liberty interest in being free from SHU confinement—is more easily disposed of. This Court has recently reaffirmed the validity of pre-*Sandin* Second Circuit caselaw finding such a state-created liberty interest. *Gonzalez v. Coughlin*, 969 F.Supp. 256 (S.D.N.Y.1997) (citing cases). "The Supreme Court in *Sandin* expressly stated its belief that the due process principles 'were correctly established and applied in *Wolff*.' Thus, federal cases finding under *Wolff* that New York State regulations granted a protected liberty interest to inmates are still good law." *Id.*, 969 F.Supp. at 258 (citation omitted). Unless and until the Circuit holds otherwise, *cf. Sealey*, 116 F.3d at 52 (not addressing issue because it was not preserved on appeal), that is the law in this Circuit.

### C. Due Process

 While defendants have not addressed their summary judgment motion to the due process violations alleged to have occurred at the initial hearings, the undisputed record indicates that plaintiffs were denied certain witnesses at their initial hearings, allegedly because those witnesses refused to testify. Both plaintiffs' hearings were reversed because of defendant Trask's failure to adequately investigate the reasons for the refusal to testify. As the constitution provides inmates with a limited right to call witnesses on their behalf, *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974), plaintiffs have raised an issue of fact as to whether their constitutional rights were violated. As this

---

**6.** *Compare Sandin*, 515 U.S. at 486–89, 115 S.Ct. at 2302 (possible effect of disciplinary determination on parole insufficient to create liberty interest) *with Carey*, 435 U.S. at 266, 98 S.Ct. at 1053–54 (potential deprivation sufficient to create due process concerns regardless of actual outcome of hearing).

**7.** *Sealey*, 116 F.3d at 52 n. 1 ("Prior to *Sandin*, we assessed an inmate's entitlement to procedur-

al protections in light of the potential penalty he or she faced. We have not determined since *Sandin* was issued whether a potential or actual penalty triggers procedural protections.") (citation omitted).

**8.** Again, the Court must assume the validity of the rehearings unless and until they are invalidated.

right to call witnesses is clearly established, *see id.; McCann v. Coughlin,* 698 F.2d 112, 124–25 (2d Cir.1983); *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986), defendants' qualified immunity defense fails. Finally, with respect to defendant Miller, there is an issue of fact as to his personal involvement, as he has admitted that in his capacity as Acting Superintendent he likely reviewed the first hearing determination and had the power to correct any problems. Miller Dep. at 21. Summary judgment is therefore denied with respect to defendant Miller.

## CONCLUSION

For the reasons discussed above, defendants' motion is GRANTED insofar as it relates to any claims growing out of the second hearings (including all claims against defendant DeBartolo) and those claims are DISMISSED WITHOUT PREJUDICE. Defendants' motion is DENIED insofar as it relates to the claims growing out of the initial hearings (including the claim against defendant Miller). A trial limited to any constitutional violations arising from the initial hearing and plaintiffs' entitlement to nominal and mental anguish damages will commence on August 18, 1997.

**SO ORDERED.**

## *AMENDING OPINION AND ORDER*

In a previous Opinion and Order dated July 31, 1997 ("Original Opinion"), I granted in part and denied in part defendants' motion for summary judgment. For the reasons discussed below, that Opinion and Order is hereby modified in accordance with this Opinion.

Plaintiffs are inmates in the custody of the New York State Department of Correctional Services. They brought this action under 42 U.S.C. § 1983 challenging the constitutionality of certain disciplinary action taken against them. Specifically, they challenged disciplinary hearings that resulted in their loss of

good time and confinement to a Special Housing Unit. Each plaintiff had two sets of hearings: an initial hearing that was reversed on administrative appeal and a subsequent hearing that reimposed the original disciplinary punishment.

As noted in the Original Opinion, neither the defendants, represented by the New York State Attorney General's Office, nor the plaintiffs, represented by pro bono lawyers, addressed the impact of the Supreme Court's decision in *Edwards v. Balisok,* —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) on this case.[1] Neither did the parties address the impact of the Prison Litigation Reform Act ("PLRA").[2] While the Court relied on *Edwards* in the Original Opinion in holding that plaintiffs' claims with respect to their second set of hearings were barred because those hearings have not been reversed, the Court failed to address the impact of the PLRA on the remainder of plaintiffs' claims. This opinion is meant to correct that oversight.

In the Original Opinion, the Court denied defendants' motion for summary judgment as to plaintiffs' claims with respect to their initial disciplinary hearings and held that should plaintiffs establish constitutional violations with respect to the initial hearings they would be entitled to nominal damages or mental anguish damages. In light of the recent amendments in the PLRA to the Civil rights of Institutionalized Persons Act, however, that conclusion was incorrect. Pursuant to those amendments, "[n]o federal civil action may be brought by a prisoner in confined in a ... correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Accordingly, plaintiffs would not be entitled to damages for mental anguish and would be limited instead to nominal damages for any constitutional violation

---

1. Defendant did submit a letter-brief addressing *Edwards* after this Court had done the research and drafted, but before it issued, the Original Opinion.

2. Surprisingly, defendants failed to address this issue not only in their original moving papers but in their motion for reargument as well. The Court did not address defendants' motion for reargument because the parties have submitted to the Court a stipulation of discontinuance.

they could prove. The prior Opinion and Order is amended accordingly.

**SO ORDERED.**