Gerard MORAY, Plaintiff,

v.

CITY OF YONKERS, Alfred C. Cava, Leonard Smith, Louis Lombardi, James Whitton, and Richard Bonito, Defendants.

No. 95 CV 6712.

United States District Court,
S.D. New York.

April 17, 1996.

**10**

Michael H. Sussman, Goshen, NY, for Plaintiff.

Corporation Counsel, City Hall, City of Yonkers, Yonkers, NY, for Defendants.

PARKER, District Judge.

This action alleging violation of a public employee's civil rights, under 42 U.S.C. § 1983 and the First Amendment of the United States Constitution, is before this Court on the defendants' motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTS

The facts as alleged in the complaint are as follows:

The plaintiff, Gerard Moray, served as a detention officer at the Yonkers City Jail for seven years and had been granted permanent civil service status. During the course of his employment, Moray's immediate supervisor, co-defendant Leonard Smith, allegedly engaged in a pattern of misconduct which involved expressing his desire for sexual relations with Moray's wife. For example, in December 1994, Smith allegedly presented Moray with a Christmas gift for Moray's wife. Unbeknownst to Moray, the gift consisted of obscene and explicit clothing and an off-color greeting card, both of which offended Moray's wife.

In January 1995, Moray complained to Smith's supervisors, co-defendants James Whitton and Mario Lombardi, alleging that Smith was engaging in favoritism, racism and sexism in operating the City Jail. When Whitton and Lombardi failed to respond in a way that satisfied Moray, he filed a formal complaint against Smith with the Internal Affairs Department of the Yonkers Police Department. The complaint also charged Whitton and Smith with corrupt and illegal activity.

In a Supplementary Report annexed to the complaint, Moray alleged that Whitton threatened to manipulate detention officers' hours if they refused to purchase items for him. The report further alleged that Smith publicly made sexually degrading remarks about Moray's wife and suggested that he intended to woo her away from Moray. Additionally, Moray alleged that Smith polluted the workplace with racism, frequently using racial slurs, and pressured Moray to falsify reports.

Co-defendant Richard Bonito was put in charge of the Internal Affairs investigation. Moray alleges that after Lombardi, Whitton and Smith learned about the complaint, they conspired to retaliate against Moray by making false accusations against him in an intentional effort to cause his suspension. Meanwhile, Bonito allegedly engaged in "whitewashing" Moray's complaint and told Moray there was little strength to his allegations.

On March 1, 1995, Moray was suspended from his job and on March 6, 1995, upon approval from Whitton, Lombardi and Smith, the City of Yonkers promulgated charges against Moray which placed him on unpaid suspension status. On April 6, 1995, the City's Personnel Commissioner, co-defendant Alfred C. Cava, held a hearing and upheld Moray's suspension. Consequently, Moray remained on unpaid suspension status for 120 days until June 30, 1995, when, pursuant to the terms of an existing collective bargaining

agreement, he was returned to a salaried position at a different location.

On August 8, 1995, Moray filed a complaint pursuant to 42 U.S.C. § 1983 alleging that Smith, Whitton, Lombardi, Bonito, Cava, and the City of Yonkers had conspired to retaliate against him for filing the complaints and that this retaliation violated his First Amendment rights to freedom of speech. In response, the co-defendants filed this motion to dismiss for failure to state a claim. The motion to dismiss is based on three grounds: (1) Moray's statements did not constitute speech on a matter of public concern and was, therefore, not protected by the First Amendment; (2) the individual defendants are protected from liability in this action under the doctrine of qualified immunity; and (3) Moray's claim against the City of Yonkers must be dismissed because he has not alleged that a city policy caused any deprivation of his constitutional rights.

## DISCUSSION

At this stage in the litigation, this Court must accept each of the plaintiff's allegations as being true. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### A. *Speech on a Matter of Public Concern*

■ To be protected under the First Amendment, a public employee's speech must implicate matters of public concern. The Supreme Court has held that determining whether speech involves a matter of public concern entails an inquiry into the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983). When making such an inquiry, the determinative question is whether the statement arises from the declarant's role as a public citizen or from his status as a public employee. *See Blum v. Schlegel,* 18 F.3d 1005, 1012 (2d Cir.1994). When an employee's speech in-volves matters only of personal interest, a federal court is generally not an appropriate forum in which to review the personnel decision of a public agency made allegedly in response to the employee's statement. *See Connick,* 461 U.S. at 147, 103 S.Ct. at 1689–90. However, when the employee's complaints to a supervisor implicate system-wide discrimination, they unquestionably involve a matter of public concern. *See Marshall v. Allen,* 984 F.2d 787 (7th Cir.1993) (permitting § 1983 claim when employee was discharged for supporting employees who had filed gender discrimination suit).

■ In the present case, while Moray alleges specific matters of personal interest, he also alleges that Smith engaged in racism, favoritism and sexism. Additionally, he alleges that each of the co-defendants conspired to perpetuate these acts. Speech aimed at identifying or eradicating such official misconduct in a public institution qualifies as speech involving a matter of public concern and enjoys the protection of the First Amendment. *See, e.g., Davis v. Ector County,* 40 F.3d 777, 783 (5th Cir.1994); *Wilson v. UT Health Center,* 973 F.2d 1263, 1269 (5th Cir.1992).

Therefore, defendants' motion to dismiss the complaint on the grounds that it does not allege speech involving a matter of public concern is denied.

### B. *Qualified Immunity*

■ The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages in cases under 42 U.S.C. § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (2d Cir.1990) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even when the plaintiff's federal rights are clearly established, qualified immunity may still bar a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate the rights of the plaintiff. *See*

*Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991).

■ It is well-settled law that punitive action taken by a public official solely in response to an employee's protected speech is a violation of the First Amendment.[1] Because Moray has alleged that he spoke of official misconduct, sexual harassment, racial discrimination and corruption, which may be matters of public concern, whether the co-defendants' belief that terminating Moray did not violate his freedom of speech rights was objectively reasonable must await some preliminary discovery. Defendants' motion to dismiss on this ground is denied without prejudice and with leave to renew as soon as an appropriate record is available.

### C. *City Policy or Custom Depriving Constitutional Rights*

■ Under § 1983, a municipality may only be liable for the violation of a person's civil rights if the moving force behind that violation was an official policy or custom of the municipality. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). The Second Circuit has established a two prong test which a § 1983 plaintiff must pass before recovering from a municipality. First, the plaintiff "must prove the existence of a municipal policy or custom" that caused his injuries. *See Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) (citation omitted), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). Second, the plaintiff must establish a causal connection between the policy and the alleged civil rights violation. *See Vippolis,* 768 F.2d at 44.

■ To satisfy the first prong of the test on a motion to dismiss, Moray must allege the existence of: (1) a formal policy which is officially endorsed by the municipality, *see Monell,* 436 U.S. at 690, 98 S.Ct. at 2035–36; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights,

*see Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials, *see Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Moray has failed to assert any of these requisite allegations in his amended complaint.

First, Moray has not alleged a formal policy which is officially endorsed by the municipality. Rather, Moray relies on the alleged civil rights violations by the individual co-defendants Smith, Whitton, Lombardi, Bonito, and Cava as evidence that the actions of policy-making officials triggered municipal liability. This argument, however, is erroneous. *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989), held that whether an official has policy-making authority is determined by state and local law. Under the City of Yonkers Charter, only the mayor and the city council are endowed with general policy-making authority. *See* Yonkers City Charter §§ C3–2 and C4–1. Consequently, at the time of the alleged civil rights violations, the individual co-defendants did not qualify as policy-making officials. Thus, allegations of their misconduct does not suggest an officially endorsed policy which would implicate the City of Yonkers.

Next, Moray's amended complaint does not allege that the co-defendants' misconduct was either widespread or persistent. Nor is there any allegation that policy-making officials had constructive knowledge of any "practice" of misconduct.

Finally, Moray's amended complaint does not allege any failure by official policy-makers to properly train or supervise the co-

---

1. *See, e.g., Rankin v. McPherson,* 483 U.S. 378, 388–89, 107 S.Ct. 2891, 2899–2900, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 152, 103 S.Ct. 1684, 1693, 75 L.Ed.2d 708 (1983); *Piesco v. City of New York Department of Personnel,* 933 F.2d 1149, 1159 (2d Cir.1991).

defendants. Here, again, without such an allegation, the city is not implicated.

Consequently, because the amended complaint fails to allege the first prong of the municipal liability test, the defendants' motion to dismiss the § 1983 claim against the City of Yonkers for failure to state a claim is granted.

## CONCLUSION

In conclusion, defendants' motion to dismiss the complaint as against the City of Yonkers is granted, but in all other respects is denied.

SO ORDERED.