Devon **LLOYD, Brandi Simmons, and Chayrmar Brown, Plaintiffs,**

v.

**CITY OF NEW YORK, Dora B. Schriro, and Luis Rivera, Defendants.**

**No. 12 Civ. 03303(CM).**

United States District Court, S.D. New York.

Signed Aug. 4, 2014.

258

Michael Lacovara, Rahim Moloo, Fresh-fields Bruckhaus Deringer LLP, Joseph Terence Gallagher, Davis Polk & Wardwell L.L.P., New York, NY, Emily Barbara Holland, Freshfields Bruckhaus Deringer, Washington, DC, for Plaintiffs.

Serena Mabel Longley, Martin John Bowe, Jr., NYC Law Department, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

McMAHON, District Judge.

Plaintiffs Devon Lloyd, Brandi Simmons, and Chayrmar Brown ("Plaintiffs") bring this action under 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc *et seq.*, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), against the City of New York through its Department of Correction ("DOC"), Dora B. Schriro, the Commissioner of the New York City Department of Correction, and Luis Rivera, the warden of the Anna M. Kross Center ("AMKC") ("Defendants"). Plaintiffs claim that they have been denied the ability to practice their Muslim religion while incarcerated at the AMKC, a correctional facility located on Rikers Island in New York City.

## BACKGROUND

### I. Procedural Background

Plaintiffs were among eight individuals whose cases, originally brought *pro se*, were consolidated under the above caption and docket number as related cases concerning the religious accommodations for Muslim inmates at AMKC. (Order at 1, Nov. 16, 2012, Docket No. 28.)

On December 4, 2012, the Court appointed the firm of Freshfields Bruckhaus Deringer U.S. LLP as *pro bono* counsel for the Plaintiffs in this action. (Docket No. 40.)

On February 11, 2013, Plaintiffs filed their Second Amended Consolidated Complaint ("SACC") on behalf of all eight original Plaintiffs. (Docket No. 53.) Plaintiffs' claims, like those of all eight original plaintiffs, arise from DOC's policies and practices concerning Muslim inmates at AMKC during the time Plaintiffs were incarcerated and continuing through today. (SACC ¶¶ 1–4, Docket No. 53.)

On February 28, 2013, Defendants moved to dismiss the Complaint, arguing, among other things, that Plaintiffs failed to exhaust their administrative remedies. (Mot. to Dismiss, Feb. 28, 2013, Docket Nos. 55–57.)

On September 26, 2013, the court issued a Decision and Order converting Defendants' motion to dismiss into a motion for summary judgment, and granting Defendants' motion with respect to five of the original eight plaintiffs. *Smith v. City of New York*, No. 12 Civ. 3303(CM), 2013 WL 5434144, at *30 (S.D.N.Y. Sept. 26, 2013). With respect to Plaintiffs Lloyd, Simmons, and Brown, the Court determined that there existed genuine issues of fact related to exhaustion, and ordered an evidentiary hearing "to ascertain whether those plaintiffs are excused from exhausting their administrative remedies before filing this lawsuit." *Id.*

The court conducted the evidentiary hearing on January 13 and 14, 2014. I concluded that Plaintiffs had two live claims—for Defendants' failure to provide a dedicated worship space (a masjid) for Muslim inmates, and Defendants' failure to provide them with religious materials, such as the Koran, (Findings of Fact and Conclusions of Law ("FFCL") 36)—because there was no administrative remedy "available" that could have been exhausted. (*Id.* 37–38).

On March 17, 2014, Defendants filed the instant Motion to Dismiss, again seeking to

dismiss the SACC pursuant to Fed. R.Civ.P. 12(b)(6). Defendants argue that Plaintiffs (1) fail to state a claim under 42 U.S.C. § 1983 or RLUIPA; (2) fail to state a claim for municipal liability against the City of New York; and (3) fail to sufficiently allege that Defendants Schriro or Rivera were personally involved in any constitutional violation. (Mot. to Dismiss, Mar. 17, 2014, ECF Nos. 105, 106.)

## II. Relevant Facts Alleged in the Complaint

The following facts are taken from the SACC and are assumed to be true for the purposes of the motion to dismiss.

AMKC is a DOC correctional facility on Rikers Island for male inmates who, for the most part, stay there temporarily during trial and/or prior to sentencing and are later released or transferred elsewhere. (Compl. ¶ 19.) AMKC has the largest capacity of any facility on Rikers Island, consisting of 40 housing areas spread over 40 acres capable of accommodating nearly 3,000 inmates.

Plaintiffs each were detained at AMKC during all or part of 2012. (SACC ¶ 2.) Each of the Plaintiffs is a practicing Muslim and was a Muslim during the time of his incarceration at AMKC. *Id.*

DOC implements its policies in all of its correctional facilities, including AMKC, by promulgating guidelines (the "Directives"). These Directives cover the religious practices and activities of inmates. (SACC ¶ 21.) The system-wide Directives are implemented by each facility's warden via Command Level Orders. *Id.*

DOC Directives concerning religious practice provide that inmates and detainees have the unrestricted right to hold any religious belief or belong to any religion, and that inmates and detainees should be permitted to practice their religions in any manner that does not present a clear and present danger to the safety and security of an institution or disrupt its orderly administration.

DOC Directives provide that inmates and detainees are permitted to select a religious affiliation and to participate in religious programming, which includes congregate religious services. (SACC ¶ 23.) DOC facilities are required to schedule appropriate congregate religious services and to provide appropriate spaces for such services. *Id.*

Plaintiffs allege that the DOC policies and practices actually in place at AMKC do not reflect those outlined in the DOC Directives. Specifically, Plaintiffs allege that Muslim inmates at AMKC "are not provided with adequate prayer facilities." (Compl. ¶¶ 3–4.) Plaintiffs allege that they were forced to conduct their daily prayers and weekly "Jumu'ah" worships services in the AMKC gymnasium, which is an unsuitable space for worship because it is crowded with Corrections Officers and other inmates, and otherwise failed to serve as a reasonable accommodation for religious practice. (Compl. ¶¶ 29–30, 40, 48.)

On other occasions, Plaintiffs had to congregate in the AMKC Christian chapel, which contained pews that made it impossible for Plaintiffs to kneel for prayer, as well as Christian images that were discordant with Muslim beliefs. (Compl. ¶ 29.)

Moreover, AMKC did not provide a dedicated space for Plaintiffs to wash their hands and feet in preparation for prayer, despite the fact that such ritual ablutions are a requirement before prayer. (Compl. ¶¶ 3, 29.)

Plaintiffs further allege that, while Christian and Jewish inmates had "free access to plentiful religious texts and other materials," Muslim inmates "were not afforded adequate supplies of basic religious

materials, like copies of the central Muslim sacred text, the Koran." (Compl. ¶ 30.)

Plaintiffs claim that they sent a letter to Defendant Schriro, the DOC Commissioner, advising her of the violations of their civil rights occurring at AMKC. (Compl. ¶ 43.) Plaintiff Lloyd admits that he received a reply letter from the office of Defendant Schriro, stating that the New York City Department of Correction had received Lloyd's letter and that the issues described in the letter had been forwarded to the appropriate unit for investigation. (Decl. of Devon Lloyd in Opp'n to Mot. To Dismiss ("Lloyd Decl.") Ex. A, ECF No. 79.) The response letter was signed by Maggie Peck, the Executive Director of Constituent Services and External Affairs. (*Id.*)

Plaintiffs allege that Defendant Rivera, the Warden of AMKC, "would have been informed of Plaintiffs' grievances regarding the violations of their civil rights, but failed to act on that information or otherwise to remedy the wrong." (Compl. ¶¶ 44, 52.) They do not specify how Defendant Rivera was so informed. Plaintiffs also allege that Defendant Rivera was "ultimately responsible for the establishment and maintenance of policies and practices relating to religious programming and facilities at AMKC" and/or "grossly negligent in failing to train or supervise staff in procedures that did not violate Plaintiffs' rights." (Compl. ¶¶ 44, 52.)

**DISCUSSION**

Plaintiffs' SACC contains two factually substantive complaints: (1) Defendants failed to provide Muslim inmates with an adequate/appropriate worship space at AMKC; and (2) Muslim inmates at AMKC were not afforded an adequate supply of basic religious materials, such as copies of the Koran. Each of these substantive complaints give rise to three causes of action. Two are constitutional torts pursuant to 42 U.S.C. § 1983: (1) violation of Plaintiffs' free exercise rights under the Free Exercise Clause of the First Amendment, and (2) discrimination against adherents to their religion in violation of the Equal Protection Clause of Fourteenth Amendment. Plaintiffs also assert that Defendants' violated Plaintiffs' free exercise rights as generated by RLUIPA.

I conclude that Plaintiffs have stated claims for relief under Section 1983 and RLUIPA, but only with respect to Defendants' failure to provide Muslim inmates with an adequate or appropriate space for worship. Plaintiffs' claims concerning the failure to provide religious materials to Muslim inmates at AMKC are dismissed.

**III. Legal Standards**

**A. Standard of Review for a Rule 12(b)(6) Motion to Dismiss**

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir.2007). However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged his claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937.

### B. Standard of Review for a Free Exercise Claim Under 42 U.S.C. § 1993

■ It is well-settled that prisoners "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). *See also Pugh v. Goord*, 571 F.Supp.2d 477, 497 (S.D.N.Y.2008). However, a prisoner's right to freely exercise his religion must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990)).

■ The Second Circuit directs that courts faced with constitutional free exercise claims must first assess "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legiti-

mate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988); *see generally Ford*, 352 F.3d at 588. The Second Circuit has indicated that a challenged practice must be a substantial burden on a plaintiff's religious belief, *Ford*, 352 F.3d at 591; however, the exact "contours of the burden standard" appears not to have been decided in this Circuit. *See Washington v. Gonyea*, 538 Fed.Appx. 23 (2d Cir.2013) (summary order) (citing *Salahuddin v. Goord*, 467 F.3d 263, 275, n. 5 (2d Cir.2006)).

■ Even if the challenged policy substantially burdens the Plaintiff's free exercise of religion, "the policy nevertheless would be constitutionally permissible if it was reasonably related to legitimate penological interests." *Pugh v. Goord*, 571 F.Supp.2d 477, 500 (S.D.N.Y.2008). *See also, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, claims brought directly under the First Amendment are governed by a reasonableness standard, and inmates' First Amendment rights must be balanced against governmental interests in security and discipline.

### C. Standard of Review for an Equal Protection Claim Under 42 U.S.C. § 1938

■ The Equal Protection Clause of the Fourteenth Amendment provides that no person shall be denied "the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Essentially, it prohibits the disparate treatment of a plaintiff from similarly situated individuals." *Spavone v. City of New York*, 420 F.Supp.2d 236, 240 (S.D.N.Y.2005) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). "In order for [a plaintiff] to state an equal

protection claim, [he] must allege that [he was] intentionally discriminated against on the basis of [his] religion" *People United for Children, Inc. v. City of New York,* 108 F.Supp.2d 275, 298 (S.D.N.Y.2000) (citing *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 48 (2d Cir.1999)).

The reasonableness standard for free exercise claims applies to equal protection claims. "[A] prison policy 'is valid if it is reasonably related to legitimate penological interests.'" *Barnes v. Ross,* 926 F.Supp.2d 499, 506 (S.D.N.Y.2013) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Accordingly, "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." *Benjamin v. Coughlin,* 905 F.2d 571, 575 (2d Cir.1990).

### D. Standard of Review Under RLUIPA

The RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Specifically, RLUIPA prohibits the government from burdening a prisoner's freedom to exercise his or her religion unless it can demonstrate that the burden "is in furtherance of a compelling governmental interest," and "is the least restrictive means of furthering that compelling governmental interest." *See* 42 U.S.C. § 2000cc–1(a).

A plaintiff alleging a RLUIPA violation must first show that the challenged conduct substantially burdened his sincerely held religious beliefs. *See Singh v. Goord,* 520 F.Supp.2d 487, 498 (S.D.N.Y.

2007). "[W]hile mere inconvenience to the adherent is insufficient to establish a substantial burden, demonstrating a substantial burden is not an onerous task for the plaintiff." *Singh,* 520 F.Supp.2d at 498 (internal citations and quotation marks omitted).

"Once a plaintiff has demonstrated the existence of a substantial burden on his or her exercise of religion, the burden then shifts to the [defendant] to establish that the challenged action or policy furthers a compelling state interest in the least restrictive manner." 42 U.S.C. § 2000bb–1(b); *Muhammad v. City of New York Dep't of Corrections,* 904 F.Supp. 161, 188–89 (S.D.N.Y.1995). Significantly, RLUIPA places a much higher burden on defendants than the analysis under the First Amendment, "which require[s] only that a burden be "reasonably related to legitimate penological interests."" *Pugh v. Goord,* 571 F.Supp.2d 477, 503–04 (S.D.N.Y.2008).

### IV. The Rule 12(b)(6) Motion to Dismiss is Granted in Part and Denied in Part

### A. Plaintiffs State a Claim for Relief under 42 U.S.C. § 1983 and RLUIPA with Respect to the Provision of Worship Space for Muslims at AMKC.

Plaintiffs have stated a claim for relief under the Free Exercise Clause, the Equal Protection Clause and the RLUIPA with respect to the adequacy of the worship space offered to Muslims at AMKC. Whether they can prove that claim is another matter entirely, but I will not dismiss it on motion.

In the SACC, Plaintiffs allege that Defendants' failure to provide them with "adequate and appropriate space for Muslim

congregate services, daily prayers and other worship activities" placed a substantial burden on their sincerely held religious beliefs. (SACC ¶¶ 40, 48.)

While Plaintiffs do not necessarily have a constitutional or legal right to a dedicated place of worship, such as a mosque or masjid, "[r]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Plaintiffs allege that Muslim inmates at AMKC "were forced to conduct their regular religious services and daily prayers in the AMKC gymnasium," which was "frequently flooded." Frequent flooding on the space used for religious worship would prevent Plaintiffs from conducting services in that space, and so could be understood to substantially burden their exercise of religion. (SACC ¶ 29.)

Further, Plaintiffs allege that Muslim inmates were sometimes "forced to conduct Muslim services in the AMKC Christian chapel, where pews prevented Plaintiffs' from kneeling for prayer, and which displayed Christian images that were discordant with Plaintiffs' beliefs." They also allege that "AMKC did not provide a dedicated space for Plaintiffs to wash their hands and feet in preparation for prayer, despite the need for such facilities to conduct the appropriate pre-prayer ritual." (SACC ¶ 29.) I cannot say on a motion to dismiss for failure to state a claim that the inability of a Muslim to prostrate himself during prayer, or to engage in ritual ablution prior to prayer, does not rise to the level of a substantial burden on the free exercise of religion.

This being a motion to dismiss, Defendants have not answered, and so have not yet articulated any "legitimate penological interest" or "compelling state interest" that would justify the alleged "substantial burden" on Plaintiffs' sincerely held religious beliefs under the Free Exercise Clause or RLUIPA. They may yet do so, of course, but as Plaintiffs have satisfied their less-than onerous task of pleading that Defendants placed a substantial burden on their ability to freely exercise their religion, *Singh,* 520 F.Supp.2d at 498, I must deny the motion to dismiss Plaintiffs' free exercise claims, both constitutional and statutory.

Plaintiffs' allegations in the SACC concerning the failure to provide adequate or appropriate worship space at AMKC also state an equal protection claim. Plaintiffs' allege that there is a Christian Chapel at AMKC—full of Christian imagery and pews for prayer—while Muslim inmates were not provided with an adequate or appropriate worship space, or with a place where they could wash their hands and feet before prayer. At the motion to dismiss stage, it looks like one religious group is being favored over others. *People United for Children, Inc.,* 108 F.Supp.2d at 298 (citing *Hayden,* 180 F.3d at 48). That may not be the case—the chapel might be non-denominational, or there might be a legitimate penological interest in having fixed seating as opposed to easily moveable chairs in the chapel, or the provision of liquids might create security issues. But all that remains to be fleshed out in discovery, and decided on a motion for summary judgment or at trial.

**B. Plaintiffs Fail to State a Claim for Relief under 42 U.S.C. § 1983 or RLUIPA with Respect to the Provision of Religious Materials at AMKC.**

By contrast, Defendants are correct that Plaintiffs fail to state either a constitutional or a statutory claim with respect to the provision of religious mate-

rials at AMKC, because Plaintiffs "have not alleged that [D]efendants interfered with [their] ability to possess religious materials or texts." (Def. Mot. to Dismiss at 17.)

Drawing all reasonable inferences in the Plaintiffs' favor, as this Court must do on a motion to dismiss, the SACC alleges that Plaintiffs "were not afforded adequate supplies of basic" religious materials and texts as compared to the Christian and Jewish inmates, who had "free access to plentiful religious materials and texts." (SACC ¶ 30.) That allegation, even if true, is not enough to support a free exercise claim under either the first amendment or RLUIPA.

██ Defendants correctly point out that inmates enjoy no constitutional or legal right to receive religious materials at government expense. *See Cruz v. Beto,* 405 U.S. 319, 323, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (Burger, CJ., concurring); *Ward v. Rabideau,* 732 F.Supp.2d 162, 180 (W.D.N.Y.2010). Thus, Plaintiffs cannot state a claim against Defendants for failing to ensure an adequate supply of religious materials unless they also allege that (1) DOC provided such materials to inmates of other faiths but not Muslims (in which case they would state an Equal Protection claim), or (2) some DOC policy or practices interfered with their ability to obtain an adequate supply of such materials from outside sources.

In *Cruz,* the Supreme Court reversed the dismissal of the prisoner's First Amendment claim where the prisoner alleged that he had been "prevented by the Defendants from borrowing or lending Buddhist religious books and materials and has been punished by said Defendants for sharing his Buddhist religious material with other prisoners." *Cruz, supra,* 405 U.S. at 329, 92 S.Ct. 1079. In his concurring opinion, Justice Blackmun emphasized

that, "There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, Buddhist materials cannot be denied to prisoners if someone offers to supply them." *Id.* at 323, 92 S.Ct. 1079. Plaintiffs do not allege that DOC received donations of Korans and other Islamic materials but withheld these materials from Plaintiffs, or that DOC refused to accept donations of Islamic prayer books while accepting Bibles and religious texts from other sects.

██ Plaintiffs' allegations with respect to the provision of religious materials are also insufficient to state an Equal Protection claim. Plaintiffs allege that they were "not afforded adequate supplies of basic religious texts and other materials," whereas Christian and Jewish inmates had "free access to plentiful religious texts and other materials." (SACC ¶ 30.) However, no facts are pleaded in the SACC to support an inference that Defendants did anything to influence the provision of religious materials in a discriminatory manner. There are no facts alleged that support a claim that Plaintiffs were treated differently on account of their religion; nothing in the complaint suggests that similarly-situated inmates of other faiths were treated more favorably than Plaintiffs, or that Plaintiffs were singled out for discriminatory treatment on account of their religion. Because Plaintiffs do not allege that Defendants deliberately treated Muslim inmates differently from any similarly-situated inmates who adhere to religions, Plaintiffs fail to state a claim against Defendants under the Equal Protection Clause with respect to the provision of religious materials at AMKC. *See Bussey v. Phillips,* 419 F.Supp.2d 569, 582 (S.D.N.Y.2006) (holding prisoner stated equal protection claim where he pointed to

two particular incidents of allegedly unequal treatment in his complaint); *Barnes v. Fedele,* 760 F.Supp.2d 296, 301 (W.D.N.Y.2011) (holding prisoner failed to state equal protection claim where he alleged no facts in his complaint to support a claim that he was treated differently on account of his religion).

## V. Personal Involvement of the Individual Defendants

█ It is well settled that a supervisory defendant must be personally involved in an alleged constitutional deprivation in order to be liable under § 1983. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006); *see also Grullon v. City of New Haven,* 720 F.3d 133, 138–39 (2d Cir.2013). Individual liability under § 1983 may not be based on a theory of *respondeat superior* or vicarious liability. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). "The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon,* 58 F.3d at 874. Rather, a plaintiff must allege that the supervisor was personally involved in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 254 (2d Cir.2001); *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001).

█ "Personal involvement is a question of fact and must be satisfied as to each individual defendant." *Cabassa v. Oshier,* 2013 WL 1183296, at *8 (N.D.N.Y. Mar. 21, 2013) (citing *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986)). The Second Circuit has held that the personal involvement of a supervisory defendant may be shown if the Plaintiff alleges that the defendant: (1) participated directly in the alleged constitutional violation; (2) failed to remedy the wrong after being informed of it; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Defendants contend that the categories in *Colon* are no longer viable after *Iqbal.* (Mot. to Dismiss, Docket No. 106, at 15.) However, the Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), did not completely eliminate the *Colon* rule. The claims in *Iqbal* involved, *inter alia,* denial of equal protection and discrimination—legal theories that require proof of discriminatory intent. In that context, the Supreme Court held that a supervisor's "mere knowledge of his subordinate's discriminatory purpose" does not render the supervisor personally involved in violating the constitution. *Id.* at 677, 129 S.Ct. 1937. Rather, "a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676, 129 S.Ct. 1937.

As the Supreme Court explained, however, "the factors necessary to establish a [constitutional] violation will vary with the constitutional provision at issue." *Id.* In this circuit, where discriminatory intent is not an element of a constitutional claim, *Colon* remains the standard for establishing personal involvement by supervisory officials under 42 U.S.C. § 1983. *See Ramey v. Perez,* No. 13 Civ. 00017(CM), 2014 WL 407097, at *4 (S.D.N.Y. Jan. 31, 2014); *Plunkett v. City of New York,* No. 10 Civ.

6778(CM), 2011 WL 4000985, at *8–9 (S.D.N.Y. Sept. 2, 2011).

Here, Plaintiffs' free exercise claims do not require a showing of discriminatory intent, so personal involvement with respect to those claims is governed by *Colon*. However, because Plaintiffs' equal protection claims require a showing of discriminatory intent, Plaintiffs must allege that each supervisory defendant actively participated in the alleged constitutional violations, and a defendant's failure to act will not result in liability under Section 1983. Thus, the personal involvement analysis varies by claim.

### A. Defendant Schriro

Plaintiffs do not allege that Defendant Schriro personally participated in either of the alleged constitutional violations. Rather, Plaintiffs allege that Defendant Schriro was made aware of both of those violations through letters from Plaintiffs, and that Defendant Schriro "failed to act on that information or otherwise remedy wrong." This falls within the failure to remedy the wrong after being informed of it—the second *Colon* factor. *Colon*, 58 F.3d at 873.

■ With respect to the second *Colon* factor, "The cases make clear that the determination of personal involvement based on a letter of complaint to a supervisor . . . often depends upon the contents of the letter and whether the supervisor referred the letter to a subordinate officer or whether the supervisory official investigated and decided the issue him or herself." *Charles v. New York State Dep't of Corr. Servs.*, 9:07–CV–1274, 2009 WL 890548

(N.D.N.Y. Mar. 31, 2009). Where a supervisory official "reviews and responds to a prisoner's [letter of] complaint," he/she is "personally involved." *Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). If the supervisor fails to respond to the letter or passes the letter on to a subordinate to handle, the general rule is that the supervisor is not personally involved.

The controlling case here is *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997), in which the Second Circuit held that the inmate failed to produce sufficient evidence to establish personal involvement of the DOCS commissioner to make him liable under § 1983 for alleged due process violations arising from prisoner's administrative segregation where the commissioner referred the inmate's appeal letter to a subordinate for determination. The *Sealey* court granted the defendant's motion for summary judgment, holding that "[Plaintiff]'s letters and [the supervisory defendant]'s response do not demonstrate the requisite personal involvement on [the supervisory defendant]'s part." *Sealey*, 116 F.3d at 51.

■ Here, Plaintiffs allege that "some or all of Plaintiffs" informed Defendant Schriro by letter of the civil rights violations occurring at AMKC. This Court has received a copy of one of the alleged complaint letters and a response letter from the office of Defendant Schriro. (Letter from Devon Lloyd to Dora Schriro, admitted into evidence as PX–27 at the hearing held on January 13, 2014; Lloyd Decl. Ex. A.)[1]

---

1. In deciding a 12(b)(6) motion to dismiss, this court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Mor-*

*ris Cos.*, 75 F.3d 801, 808 (2d Cir.1996); *Wolff v. Rare Medium, Inc.*, 210 F.Supp.2d 490, 494 (S.D.N.Y.2002). The Complaint alleges that "some or all of the Plaintiffs informed [Schriro] by letter of the violations of their civil rights occurring at AMKC." SACC ¶ 43. Thus, the Court may consider Plaintiff's letter to Schriro and any documents attached

Lloyd wrote in his letter to Defendant Schriro that he enclosed his "grievance and statement of the situation at hand." (PX–27.) Plaintiffs contend that Lloyd attached (and Defendant Schriro received) his grievance describing the alleged constitutional violations at issue in this action. Lloyd's grievance, of which this Court has a copy, reads:

> *Grievance:* I am a Muslim and I ask/request that there be a masjid in order to pray & study as there is a church. The masjid was eliminated and never replaced. This violates the first amendments and the correction law at Section 500 in article 20 thereof. To receive proper reading materials without having to wait for donations.
>
> *Action Requested:* to be able to worship my lord in a masjid and receive proper reading materials that are prescribed with the religion & compliance to 500–ee et. al. (PX–1.)

Even assuming these allegations are true, as this court must on a motion to dismiss, Plaintiffs fail to adequately allege that Defendant Schriro violated their civil rights to the free exercise of religion under the second *Colon* factor. This Court has received a copy of Defendant Schriro's letter responding to Plaintiff Lloyd's complaint. Like the commissioner in *Sealey,* Defendant Schriro notified Plaintiff Lloyd that she had forwarded the issues described therein to "the appropriate unit for investigation." (Lloyd Decl. Ex. A.) The fact that Defendant Schriro forwarded Plaintiff Lloyd's letter of complaint to another official for handling means she cannot be held liable under § 1983. Courts have consistently held that, "if an official receives a letter from an inmate

and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." *Rivera v. Fischer,* 655 F.Supp.2d 235, 238 (W.D.N.Y.2009). *See also, Mateo v. Fischer,* 682 F.Supp.2d 423, 431 (S.D.N.Y. 2010) (granting motion to dismiss claim against DOC commissioner for lack of personal involvement where prisoner alleged that commissioner forwarded his complaint letters to subordinates for investigation and sent a response to prisoner stating that prisoner had not provided sufficient information to support his allegations); *Scott v. Scully,* No. 93 Civ. 8777(HB), 1997 WL 539951, at *4 (S.D.N.Y. Aug. 28, 1997) (granting motion to dismiss claim against superintendent due to lack of personal involvement where plaintiff merely alleged that superintendent forwarded complaint letter and affirmed dismissal of plaintiff's grievance); *Edmonson v. Coughlin,* 21 F.Supp.2d 242, 242 (W.D.N.Y.1998) (granting motion to dismiss claim against commissioner due to lack of personal involvement where prisoner's complaint was limited to forwarding of prisoner correspondence to appropriate staff).

**B. Defendant Rivera**

██ Plaintiffs' allegations regarding Defendant Rivera's personal involvement in the violations of Plaintiffs' civil rights to the free exercise of religion fall under the third and fourth *Colon* categories. Plaintiffs allege that Defendant Rivera is "ultimately responsible for the establishment and maintenance of policies and practices relating to religious programming and facilities at AMKC" and that he was "grossly

---

to the letter. Although Plaintiffs do not explicitly reference a response from Schriro in the Complaint, this Court can consider Schriro's response letter to Plaintiff Lloyd because

Plaintiff Lloyd either possessed or knew about Schriro's response when he brought this lawsuit.

negligent in failing to train or supervise staff in procedures that did not violate Plaintiffs' rights." (SACC ¶¶ 44, 52.) Further, Plaintiffs specify the DOC policies and practices that allegedly violated Plaintiffs civil rights, including failing to provide adequate and appropriate space for Muslim congregate services, daily prayers, and other worship activities, and failing to provide adequate religious materials. (SACC ¶¶ 40, 48.) These allegations are sufficient to impute personal involvement to Defendant Rivera at the pleading stage. *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937.

## VI. Municipal Liability

Defendants' motion to dismiss Plaintiff's *Monell* claim against the City of New York at the pre-answer stage is denied. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

 In order to recover against a municipality in a Section 1983 action, a plaintiff must allege that a municipal policy or custom caused the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir.1987). However, a municipality may not be held liable solely on the basis of *respondeat superior* in a Section 1983 action. *Monell*, 436 U.S. at 694–95, 98 S.Ct. 2018.

 The Second Circuit has established a two prong test that a plaintiff must pass before recovering from a municipality. *See generally Moray v. Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996) (internal citations and quotations omitted throughout). First, the plaintiff must allege "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries. Second, the plaintiff must establish a causal connection—an "affirmative link"—between the policy and deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).

 Plaintiffs have satisfied the "policy or custom" prong by alleging the existence of "a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials." *Moray v. Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996). Plaintiffs also sufficiently allege that this policy of customs caused their injury-especially since "*Monell* claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2)". *See Guzman v. United States*, 11 CIV. 5834 JPO, 2013 WL 5018553 (S.D.N.Y. Sept. 13, 2013)

## VII. Relief

Defendants also move for dismissal of various forms of relief requested by the plaintiffs. Forms of relief are not causes of action; however, I address Defendants' requests here.

### A. Injunctive Relief

Defendants argue that Plaintiffs' claim for injunctive relief is moot, because none of the three Plaintiffs is currently incarcerated in AMKC.

 It is true that, in general, a transfer from a prison facility moots an action for injunctive relief against the transferring facility. *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir.1996). However, "there is an exception to the mootness doctrine for challenged actions that are 'capable of repetition, yet evading review.'" *Pugh v. Goord*, 571 F.Supp.2d 477, 488 (S.D.N.Y.2008) (citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)). This exception will be applied if "(1) the challenged action was in

its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy*, 455 U.S. at 482, 102 S.Ct. 1181; *Muhammad v. City of New York Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir.1997).

█ Plaintiffs' action qualifies for the "capable of repetition, yet evading review" exception, and the fact that the three Plaintiffs are not at present incarcerated in AMKC does not moot their action for injunctive relief. AMKC, like all City facilities, is a jail, housing pre-trial detainees and individuals who are sentenced for periods of less than one year (or, put colloquially, are doing "City time" rather than "State time"). All residents are by definition supposed to be on Rikers Island for a short period of time—generally not long enough to permit a federal civil rights lawsuit to run its course.[2] During the course of this lawsuit, plaintiffs Lloyd and Brown have been convicted, sentenced to State time, and transferred from AMKC to State custody (i.e., for a term of more than one year). Obviously, the lawsuit was not able to be concluded before they were remanded to State custody. Their situation would be typical of the situation of any Rikers inmate—rendering a claim by Muslim inmates capable of repetition, yet evading review.

Further, there is some reason to believe that these Plaintiffs—both of whom testified that their many brushes with the law had led to a considerable number of confinements on Rikers—may someday return to AMKC, where they will find themselves subject to the same condition of which they here complain. Therefore, notwithstanding their transfer to State custody, Plain-

tiffs Lloyd and Brown maintain "legally cognizable interest[s] in the final determination of the underlying questions of fact and law," *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), and Defendants' motion to dismiss Plaintiffs' claim for injunctive relief is denied.

## B. Damages

It is not possible at this stage to assess whether individual defendant Rivera might be liable to Plaintiffs in punitive damages. Obviously, no such damages can be assessed against the City of New York.

█ Plaintiffs' claims for compensatory damages are barred by the Prison Litigation Reform Act ("PLRA") because Plaintiffs fail to allege any physical injury.

Congress enacted the PLRA in 1996 in order to "curb the filing of frivolous lawsuits by prisoners." *Cox v. Malone*, 199 F.Supp.2d 135, 139 (S.D.N.Y.2002), aff'd, 56 Fed.Appx. 43 (2d Cir.2003). In an attempt to codify limitations on legal remedies for incarcerated plaintiffs, section 1997e(e) of the PLRA states that, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*." 42 U.S.C. § 1997e(e) (emphasis added). "Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations." *Thompson*, 284 F.3d at 416.

Plaintiffs do not allege any physical injuries resulting from Defendants' alleged failure to provide Muslim inmates with an adequate or appropriate space for worship

---

**2.** Sadly, pre-trial delays often keep inmates lingering at Rikers for a much longer period than is intended.

and alleged discrimination in the provision of religious materials.[3] Defendants argue that, because no Plaintiff contends that he suffered any physical injury as a result of the violations alleged in the SACC, Plaintiffs are barred from recovering damages under the PLRA. *See Banks v. Argo,* No. 11 Civ. 4222(LAP) (S.D.N.Y. Mar. 12, 2014) (plaintiff barred from recovering compensatory damages because he failed to allege physical injury resulted from alleged constitutional violations); *Wilson v. City of New York,* No. 12 Civ. 3021(JMF), 2013 WL 4710386, *5 (S.D.N.Y. Aug. 30, 2013) (plaintiff barred from recovering compensatory damages for First Amendment and RLUIPA claims because he failed to allege any physical injuries). Indeed, "[c]ases asserting emotional harm, unaccompanied by a claim of physical harm, are routinely dismissed." *Greene v. D.O.C.,* 10 Civ. 5344 KBF, 2012 WL 694031 (S.D.N.Y. Mar. 5, 2012).

Accordingly, since Plaintiffs have not asserted any physical injuries, their prayer for compensatory damages must be stricken. That does not, of course, bar plaintiff's from recovering nominal damages if in fact their civil rights have been violated. *Wilson v. City of New York,* 12 Civ. 3021 JMF, 2013 WL 4710386 (S.D.N.Y. Aug. 30, 2013) (citing *Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002)); *Rosado v. Herard,* 12 CIV. 8943 PGG FM, 2014 WL 1303513 (S.D.N.Y. Mar. 25, 2014).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' SACC is denied with respect to Plaintiffs' claims under 42 U.S.C. § 1983 and RLUIPA re-

garding the space for Muslim Worship at AMKC. Defendants' motion to dismiss is granted with respect to Plaintiffs' claims under 42 U.S.C. § 1983 and RLUIPA regarding the provision of religious materials at AMKC. Defendants' motion to dismiss Plaintiffs' claims against Defendant Schriro is granted, but Defendants' motion to dismiss Plaintiffs against Defendant Rivera and the City of New York (*Monell* claim) is denied.

The Clerk of the Court is directed to remove Docket No. 105 from the Court's list of pending motions.

---

**3.** In their first and second claims for relief, Plaintiffs allege that Defendants caused them to experience "physical, mental, and emotional distress." (SACC ¶ 45, 53.) However, drawing all reasonable inference in favor of the Plaintiffs, the "physical" distress could only refer to Plaintiffs claims regarding Halal meals, which have already been dismissed by this Court for Plaintiffs' failure to exhaust their administrative remedies. (FFCL 36).